# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO. ___26-02816-MJ-D'Angelo___

UNITED STATES OF AMERICA,

v.

ROBERTO JESUS TERRERO FELICO and
RACHID HAMAD ZEINEDDIN SABURIT

Defendants.
_____/

FILED BY___KAN___D.C.

May 8, 2026

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - Miami

## CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to October 3, 2019 (Mag. Judge Jared M. Strauss)?   No

2. Did this matter involve the participation of or consultation with Magistrate Judge Eduardo I. Sanchez during his tenure at the U.S. Attorney's Office, which concluded on January 22, 2023?  No

3. Did this matter involve the participation of or consultation with Magistrate Judge Marty Fulgueira Elfenbein during her tenure at the U.S. Attorney's Office, which concluded on March 5, 2024? No

4. Did this matter involve the participation of or consultation with Magistrate Judge Ellen F. D'Angelo during her tenure at the U.S. Attorney's Office, which concluded on October 7, 2024? No

5. Did this matter involve the participation of or consultation with Magistrate Judge Yeney Hernandez during her tenure at the U.S. Attorney's Office, which concluded on April 1, 2026? No

Respectfully submitted,

JASON A. REDING QUIÑONES
UNITED STATES ATTORNEY

By:    */s/ Cole Press*
       COLE PRESS
       Assistant United States Attorney
       Florida Bar No. 1018396
       99 N.E. 4th Street
       Miami, Florida 33132
       Telephone: (305) 961-9162
       E-mail: coleman.press@usdoj.gov

AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
### Southern District of Florida

| | | |
|---|---|---|
| United States of America<br>v.<br><br>ROBERTO JESUS TERRERO FELICO and<br>RACHID HAMAD ZEINEDDIN SABURIT,<br><br>_____<br>*Defendants.* | )<br>)<br>)<br>)<br>)<br>) | Case No. 26-02816-MJ-D'Angelo |

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of _____ May 7, 2026, _____ in the county of _____ Miami-Dade _____ in the
_____ Southern _____ District of _____ Florida _____ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 371 | Conspiracy to Defraud the United States (TERRERO and ZEINEDDIN) |
| 18 U.S.C. § 545 | Smuggling (TERRERO only) |

This criminal complaint is based on these facts:

**See atatched Affidavit.**

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Victor Ten III, Special Agent, HSI
*Printed name and title*
HSI 11493

Attested to by the Applicant in accordance with the requirements of Fed.R.Crim.P. 4.1 by Face Time

Date: 05/08/2026

_____
*Judge's signature*

City and state: _____ Miami, Florida _____

Honorable Ellen F. D'Angelo, United States Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

Your Affiant, Victor Ten III, being duly sworn, hereby deposes and states the following:

## INTRODUCTION AND AGENT BACKGROUND

1.      I am a Special Agent assigned to the Homeland Security Investigations (HSI) and have been employed since 2025.  I graduated from the Criminal Investigator Training Program (CITP) at the Federal Law Enforcement Training Center, in Glynco, Georgia, in 2025. I graduated from Homeland Security Investigations Special Agent Training (HSISAT) at the Federal Law Enforcement Training Center, in Charleston, South Carolina, in 2026. Prior to my tenure as a Special Agent, I worked as a Deputy Sheriff for Broward County Sheriff's Office (BSO) between the years 2023-2025. Prior working as a Deputy Sheriff for BSO, I worked as Police Officer, Sergeant, and Sergeant Detective with the City of Doral Police Department between the years of 2015-2023.  I earned a bachelor's degree in criminal justice management and a master's degree in organization leadership from Union Institute & University located in Cincinnati, Ohio.

2.      In my current position as a Special Agent with HSI, I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18 of the United States Code; that is, an officer of the United States who is empowered by law to conduct investigations and make arrests for offenses enumerated in Titles 8, 18, 19 and 21 of the United States Code.  In my current capacity, I am responsible for conducting criminal investigations involving narcotics, money laundering, fraud, smuggling, and related offenses contained in Title 8, 18, 19, and 21 of the United States Code.  I have participated in numerous

investigations involving these violations and I am familiar with methods and practices of persons accused of such crimes.

3.     The facts set forth in this Affidavit are based on my personal knowledge as well as documents provided to me in my official capacity, information obtained from other individuals, including officers, my review of documents and records related to this investigation, communications with others who have personal knowledge of the events and circumstances described herein, and information gained through my training and experience. Because this Affidavit is submitted solely for the purpose of establishing probable cause, it does not contain all the information known about this investigation.

4.     As more fully described below, I respectfully submit that there is probable cause to believe that **Rachid Hamad Zeineddin Saburit** ("**ZEINEDDIN**") knowingly committed a violation of Title 18, United States Code, Section 371 (conspiracy to defraud the United States) and **Roberto Jesus Terrero Felico** ("**TERRERO**") knowingly committed a violation Title 18, United States Code, Section 371 (conspiracy to defraud the United States) and a violation of Title 18, United States Code, Section 545 (smuggling).

### PROBABLE CAUSE

5.     On May 7, 2026, **TERRERO**, arrived at Miami International Airport (MIA) on Eastern Airlines Flight #751, from Holguin, Cuba.  **TERRERO** was in possession of one piece of luggage. Upon his arrival, United States Customs and Border Protection ("CBP") officers selected **TERRERO** for a secondary inspection.

6.     Federal law requires individuals to declare certain items, including gold, to CBP officers upon entry into the United States. Furthermore, there are new Office of Foreign Assets

Control (OFAC) regulations (CBP Article 1594, dated May 1, 2025) that strictly prohibit the importation of gold bullion originating from Cuba. At the inspection point, CBP Officers obtained an oral binding declaration (CBP Form 6059B) from **TERRERO** in the Spanish language, which is **TERRERO**'s native language. CBP Form 6059B asked **TERRERO** if he was declaring any "commercial merchandise," which it defined as "articles for sale, samples used for soliciting orders, or goods that are not considered personal effects." **TERRERO** did not declare any merchandise.

7.     At secondary inspection, CBP Officers observed **TERRERO** wearing a yellow-colored chain around his neck. Upon CBP Officers' instruction, **TERRERO** removed the chain, which was thick, unusually heavy, rugged, and unfinished. When CBP Officers asked about the chain around his neck, **TERRERO** initially told CBP Officers that he sold his house and motorcycle parts in Cuba for approximately $40,000 and decided to purchase the chain to bring it into the U.S instead of bringing the currency and having to declare the currency. **TERRERO** stated he sold the house about three months prior. Upon further questioning by CBP Officers, **TERRERO** admitted the chain was given to him earlier that day by an individual, later identified as Cuban national ("Individual 1"), who went to his father's house in Cuba. Individual 1 instructed **TERRERO** to deliver the chain to a man named Rachid ("**ZEINEDDIN**") in Miami and was told to call **ZEINEDDIN** at 786-213-2800. **TERRERO** and **ZEINEDDIN** did not know each other and had never met before. **TERRERO** stated he was to be paid $200 for transporting the chain.

8.     **TERRERO** told the CBP Officers that **ZEINEDDIN** was waiting for his arrival at MIA. CBP Officers then informed HSI Special Agents of their findings. HSI Special Agents were

able to locate **ZEINEDDIN** and detained him on MIA property pending further investigation.

9.     HSI Special Agents used an OLYMPUS X-Ray Fluorescence Spectroscopy (XRF) to determine if **TERRERO**'s yellow-colored chain was made of gold. The chain tested positive for gold: it approximately 99% AU (gold) and weighed approximately 0.520 kg.

10.     At the time **TERRERO** attempted to enter the United States on May 7, 2026, he had a total of 0.520 kg of gold in his possession worth an estimated value of $70,000 U.S. on that date.[1] A photograph of the gold chain links and necklace **TERRERO** failed to declare are depicted below:



11.     During a post-*Miranda* and recorded interview with law HSI, **TERRERO** stated that Individual 1 gave him the gold chain earlier that day at his father's residence in Cuba.

---

[1] The price of gold fluctuates. Agents determined the current price of gold based on open-source checks ($3,863.05 per OZ of gold) on the date and time TERREO entered the United States.

**TERRERO** told Special Agents he did not know Individual 1's name. **TERRERO** called his father, who provided Individual 1's cellular number (+53 556-765-35). **TERRERO** admitted that Individual 1 instructed him to wear a polo shirt and to hide the gold chain under his collar. **TERRERO** said he tried the gold chain on in front of Individual 1, who then fixed **TERRERO**'s collar to better hide the chain. **TERRERO** admitted he initially lied to CBP Officers about how he obtained the gold chain. **TERRERO** told the Special Agents he had told CBP Officers he sold property in Cuba because he knew there were laws pertaining to bringing money into the U.S. **TERRERO** said he told this lie because he thought he would be able to get through Customs faster. **TERRERO** told the Special Agents he did not know **ZEINEDDIN** prior to the date of the offense. **TERRERO** explained that Individual 1 instructed him to call **ZEINEDDIN** when he landed and give him the gold chain in exchange for $200 in U.S. currency.

12. During a border search of **TERRERO**'s cell phone, HSI discovered WhatsApp conversations between **TERRERO** and **ZEINEDDIN** regarding **TERRERO**'s flight information, such as what flight number and status of the flight.

13. During a post-*Miranda* and recorded interview with law enforcement, **ZEINEDDIN** admitted to conspiring with Individual 1 to smuggle gold clandestinely into the United States. **ZEINEDDIN** explained to the HSI Special Agents Individual 1's ongoing scheme and **ZEINEDDIN**'s role in it. Individual 1 recruits Cuban nationals (such as **TERRERO**) to take gold into the United States. Individual 1 then contacts **ZEINEDDIN** to tell him who he will be meeting with at MIA. After meeting with the individual and retrieving the gold chain, **ZEINEDDIN** would confirm the transfer with Individual 1. Individual 1

would then send him further information on who to meet with next to give the gold chain. **ZEINEDDIN** shared his understanding that the gold chain goes to a refiner located in downtown Miami with which Individual 1 coordinates. **ZEINEDDIN** receives 50% of a commission after the gold chain is smelted and sold.

14.   **ZEINEDDIN** also stated to HSI Special Agents that he has done this before, and this was his second time participating in the scheme. **ZEINEDDIN** further admitted that he and Individual 1 purchased **TERRERO**'s smuggled gold chain for approximately $73,445.80 in Cuba. Individual 1 provided **ZEINEDDIN** with **TERRERO**'s picture and his phone number. **ZEINEDDIN** contacted **TERRERO** via WhatsApp messaging regarding their meet up at MIA. **ZEINEDDIN** provided HSI Special Agents with consent to search both of his phones. HSI discovered the aforementioned conversations between Individual 1 and **ZEINEDDIN** as well as conversations between **ZEINEDDIN** and **TERRERO**.

## CONCLUSION

15.   **TERRERO** was required to declare all commercial merchandise in his possession to CBP upon entry into the United States.  **TERRERO** failed to declare the gold hidden under his shirt in his possession which was valued at a total of approximately $70,000 in U.S. currency. **TERRERO** also admitted to working with Individual 1 to give the gold chain to **ZEINEDDIN**.

16.   **ZEINEDDIN** admitted to working with Individual 1 to smuggle gold into the United States by following Individual 1's instructions to meet with **TERRERO** to receive the gold chain and deliver it to another person where it would be refined in downtown Miami for a profit.

17.   Based on the aforementioned facts, Your Affiant believes that probable cause exists that **TERRERO**, did knowingly and willfully, with the intent to defraud the United States, attempt to smuggle and clandestinely introduce into the United States, from a place outside thereof, any merchandise, that is, approximately 0.520 kilograms, of gold, with an estimated value of $70,000 on that date, which should have been declared, in violation of Title 18, United States Code, Section 545. **TERRERO** also conspired with **ZEINEDDIN** and Individual 1, either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to affect the object of the conspiracy, in violation of Title 18, United States Code, Section 371.

18.   Based on the aforementioned facts, Your Affiant believes that probable cause exists that **ZEINEDDIN** conspired with **TERRERO** and Individual 1, either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to affect the object of the conspiracy, in violation of Title 18, United States Code, Section 371.

**FURTHER AFFIANT SAYETH NAUGHT.**

VICTOR TEN III
SPECIAL AGENT
HOMELAND SECURITY INVESTIGATIONS
HSI 11493

Attested to by the Applicant in accordance with the requirements of Fed.R.Crim.P. 4.1 by Face Time this __8th__ day of May 2026.

HONORABLE ELLEN F. D'ANGELO
UNITED STATES MAGISTRATE JUDGE